[No. 1821, August 26, 1916.]
# WATTERS v. TREASURE MINING & REDUCTION COMPANY et al.

### SYLLABUS BY THE COURT.
This case is decided entirely upon the facts, and involves no contested legal proposition.

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Action by Thomas E. Watters, as trustee, against the Treasure Mining & Reduction Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 153 Pac. 615.

BARNES & ROYAL of Silver City and MANN & NICHOLAS of Socorro, for appellants.

JAMES G. FITCH of Socorro and A. A. GODARD of Topeka, Kansas, for appellee.

### OPINION OF THE COURT.
PARKER, J.—This is an action for the foreclosure of the equity of redemption under a trust deed. The deed secured bonds to the amount of $250,000. Default was made in the payment of the principal and interest due on the said bonds, and in the payment of taxes, and the trustee, at the request of the majority of the bondholders, brought the action.

The mortgagor, together with two other defendants, the Clear Creek Power Company and the Glendale Power Company, filed a joint answer in which they admit the execution of the trust deed and the issuance of the mortgagor's bonds in the sum of $57,000, but denied the issuance of the remaining bonds in the sum of $193,000, except conditionally as set forth in defendants' special defense. In this special defense they allege that the W. H. McCrum Investment Company was an association or corporation doing business in Kansas City, Mo., and that

it was entirely owned, held, directed, and dominated by W. H. McCrum, Theodore Gary, and A. A. Godard; that the defendant mortgagor, in January, 1913, entered into negotiations with the said W. H. McCrum Investment Company, acting by and through the said Theodore Gary, and the mortgagor, acting by and through one R. T. Root, whereby the said W. H. McCrum Investment Company became obligated to purchase bonds of the mortgagor of the par value of $150,000 at 65 per cent. of the par value thereof; that as a part of said negotiations, and as a part of the consideration for the purchase of said bonds by the said W. H. McCrum Investment Company, it was further and contemporaneously agreed between the said W. H. McCrum Investment Company and the mortgagor that there should be organized a power company, to be known as the Clear Creek Power Company, with an authorized capital of $650,000, and an authorized bond issue of $650,000, all as outlined in what is known as the "McCrum Prospectus," which was attached to and made a part of said contract in writing; that there should be caused to be conveyed to said power company all the right, title, and interest of the mortgagor in and to its power rights on Clear creek subject only to the lien of the said trust deed securing the said $250,000 bond issue; that there should also be transferred to said Clear Creek Power Company all of the water rights on Clear creek owned by the said R. T. Root; that it was further and contemporaneously contracted between the parties to said contract, both by statements in said contract in writing and by verbal representations and agreements between the parties thereto, and forming a part of the consideration for the purchase of said bonds, that said W. H. McCrum Investment Company should market and sell the $650,000 bond issue of said Clear Creek Power Company for such price and in such manner and at such time as should enable the mortgagor to pay off and discharge the $250,000 issue of its bonds, and discharge the lien of the deed of trust being foreclosed in this action, and prevent a foreclosure of the same; that the mortgagor relied upon said contract in writing and said verbal representations, and

thereupon did deliver' and sell to said W. H. McCrum Investment Company, at 65 per cent. of their par value, not only $150,000 of its first mortgage bonds, but upon the demand of said investment company a further sum of $43,000 of said first mortgage bonds, making a total of $193,000; that such delivery and sale was not complete and absolute, but was so made in trust and subject to the conditions aforesaid; that thereafter a corporation was organized known as the Glendale Power Company, a defendant herein, having a capitalization of $650,000, and that it took over by good and sufficient conveyance all the water rights owned by the mortgagor and which authorized an issuance of $650,000 of its first mortgage bonds thereon; that about the same time the defendant the Clear Creek Power Company was organized and for a valuable consideration acquired all the water rights owned by the said R. T. Root, and did authorize an issuance of $650,-000 of its first mortgage bonds secured by the pledge of the said property, so by it acquired as aforesaid, and by the pledge of the property of the defendant the Glendale Power Company; that the organization of the said water company and the issuance of said bonds were in furtherance of the said agreement and with the knowledge and consent of the said W. H. McCrum Investment Company and as a full compliance with the terms of the said agreement; that the said W. H. McCrum Investment Company was informed and advised of all steps taken for the organization of the said two water companies, and the issuance of the said bonds to the Clear Creek Power Company in accordance with the said agreements of the parties, and that a trust deed was executed by the said Clear Creek Power Company and the said Glendale Power Company to one Tyson S. Dines, trustee, securing the payment of the said bond issue of that company by pledging all the properties of the said two water companies; that the said bonds were delivered to the said W. H. McCrum Investment Company and by it accepted for sale, but that the said W. H. McCrum Investment Company and the said W. H. McCrum, Theodore Gary, and A. A. Godard, wrongfully conspiring together and intending to de-

ceive and defraud the mortgagor and to cause it to sacrifice and lose the said $193,000 par value of its bonds so delivered to the W. H. McCrum Investment Company in trust as aforesaid, and to unlawfully cause the mining properties, mill, water rights, power plant, pipe line, and appurtenances described in the said trust deed to be sold at judicial sale at a price greatly under its actual value so that the said parties could buy in and acquire said property at a price greatly under its true value, wrongfully caused the said $193,000 par value of said bonds to be assigned and delivered to the said A. A. Godard, as defendants are informed and believe, and wrongfully failed and refused to sell the said bond issue of $650,000 of the Clear Creek Power Company or any part thereof, at or before maturity of the said $250,000 par value of bonds of the mortgagee, and wrongfully and fraudulently notified the mortgagor and the defendant the Clear Creek Power Company that the said W. H. McCrum Investment Company would make no attempt to sell the said $650,000 bond issue or any part thereof, and wrongfully and fraudulently demanded of the mortgagor the payment of the said $193,000 of said bonds, together with interest thereon, and did wrongfully and fraudulently institute this action for the foreclosure of said deed of trust.

An examination of the contract mentioned in the special defense discloses that it is in the form of a proposal and an acceptance. The proposal is signed by R. T. Root, personally, and is addressed to Theodore Gary, personally. It is a proposal to sell $150,000 par value of the bonds of the mortgagor at 65 cents on the dollar, the payment therefor to be made in certain payments specified in the proposal. It is therein proposed that the said Root should organize the Clear Creek Power Company with an authorized capital of $650,000 and the authorized bond issue of $650,000, all as outlined in the McCrum prospectus attached to said proposal, and convey all of the said Root's water rights on Clear creek to said Clear Creek Power Company, and to cause the mortgagor to transfer all of its interest and power rights on said Clear creek to said

Clear Creek Power Company, subject only to a first mortgage securing the $250,000 bond issue of the mortgagor. The acceptance is by Theodore Gary, personally, and is without exception or reservation of any kind. The prospectus attached to the proposal contains a statement of the amount of capital stock and authorized bond issue of the Clear Creek Power Company, the disposition to be made of its bonds, the description of the property securing said bonds, the estimate of earnings of the company, and the market for electrical current to be manufactured by the company. In neither the proposal, acceptance, nor prospectus is there any reference whatever to any undertaking on the part of the W. H. McCrum Investment Company to market the bonds of the Clear Creek Power Company. At the conclusion of the trial the court rendered final decree of foreclosure, making findings of fact and conclusions of law which amply support the decree.

At the beginning of the trial and again at the conclusion of the testimony for the plaintiff, the defendants made a motion for a continuance. The motion is based upon an affidavit of one of the counsel for the defendants. This affidavit is to the effect that the principal stockholder and owner of the mortgagor company is the said R. T. Root, whose residence is in the city of Denver, but who was at the time in the city of Chicago; that the books, records, and papers of the mortgagor and of the two other corporations, defendants, are kept in the city of Denver and have never been within the jurisdiction of the court since the beginning of the action; that the said R. T. Root is the principal owner in both said power companies, and that he is the agent for and represents all of the stockholders of each of these corporations; that ever since the filing of the complaint in the cause the said Root has been absent from the state of New Mexico and has been in Chicago and other Eastern cities, with the exception of occasional visits to New Mexico; that the said Root is the only person who is cognizant of all the facts connected with the alleged issue and transfer of the bonds referred to in plaintiff's complaint, and that without his presence at the trial the defendants cannot safely proceed

to trial, nor can they intelligently examine the witnesses for the plaintiff, nor offer the proof necessary to establish the defense set out in their answer; that it is impossible to procure the attendance of the said Root at the trial of the cause at this time for the reason that the defendants were served with notice that the plaintiff would take the deposition of certain witnesses in Kansas City, Mo., and that counsel for the defendants, relying upon such notice, so notified the said R. T. Root that such deposition would be taken before the trial of this cause; that the said Root was notified that notice of the desire to be present at the taking of depositions had been given and was notified by counsel that the order of the court to that effect extended the time of taking depositions for 30 days at least, and that he would have such time to prepare for trial of this cause; that counsel for defendants were not notified until the afternoon of the 14th day of November, 1914, when they were notified in a conversation with counsel for the plaintiff that he intended to produce upon the hearing, beginning the 16th of November, 1914, the witnesses, or some of them, whose names had been mentioned in the commission to take depositions; that the testimony of the witnesses named in the commission to take depositions is material to the issues in the cause and is vital to the defendants' case, and that it is impossible for the defendants or their attorneys to be ready to examine said witnesses or to proceed with the trial on the 16th of November, 1914, for the reasons above set out; that defendants and their counsel are taken by surprise by the action of the plaintiffs in failing to take said depositions; that the defendants, believing that they had 30 days' time, fully intended to apply to the court to take the depositions of several witnesses whose names are unknown to the affiant, and are known only to the said Root, with the exception of W. H. McCrum; that affiant could not intelligently examine the said McCrum if present without the presence of the said Root, and without the presence of the corporate record; that affiant is informed and believes, the information coming from said Root, that the plaintiff informed one

of the managers of one of the defendant companies that while this case was set for trial on the 16th of November, 1914, that it would not be tried at that time; that the testimony which would be taken and developed in the deposition of the witnesses, Theodore Gary, H. L. Gary, A. F. Adams, and W. H. McCrum, is and would be material to the proof of the issues raised by the pleadings; that said R. T. Root and his counsel relied upon the conduct of this case by the plaintiff in taking out a commission to take the deposition of such witnesses, and for that reason made no preparations to examine the witnesses or to enter upon the trial of the issues of the cause on the 16th day of November, 1914, that the change of plan by counsel for the plaintiff in regard to producing the two Garys, Adams, and McCrum on the 16th of November, 1914, was announced at so late a period to counsel for defendants that it was impossible to produce the said R. T. Root at said hearing or to be properly advised as to the examination and cross-examination of the said witnesses or to produce their witnesses for the defense upon other issues in the cause.

At the close of the testimony for the plaintiff, the defendants renewed their motion for a continuance based upon the facts stated in the affidavit heretofore mentioned, and asked the court for a reasonable time within which to present their evidence in support of their answer. The court overruled both of these motions, and the defendants assign error here upon the action of the court in that particular.

Counsel for defendants admit that the granting or refusal of the motion for a continuance rests in the sound judicial discretion of the court, citing our own cases of Territory v. Watson, 12 N. M. 419, 78 Pac. 504; Territory v. Walker, 16 N. M. 607, 120 Pac. 336. They argue, however, that there was an abuse of discretion in this case authorizing and requiring a review of the trial court's action.

An examination of the application shows no such abuse of discretion. In the first place, the answer goes into great detail and is verified by one of the counsel for de-

fendants. The motion for continuance runs counter to this verification in that it alleges lack of knowledge on the part of counsel to sufficiently and intelligently examine plaintiff's witnesses. The motion sets out that said R. T. Root was the principal owner of the three defendant corporations and was in Chicago. Counsel were advised two days before the trial that some of the witnesses whose depositions were to be taken would not be present, and that the depositions had not been taken by reason of the fact that defendants' counsel had asserted a right to be present at the taking of the same, and was entitled to 30 days' notice of the time. This defeated the taking of the depositions as the case had been peremptorily set by the court 30 days prior to November 16, 1914, and a commission to take the depositions was at once taken out by plaintiff. Two of the members of the syndicate which purchased the bonds, and who are charged with the conspiracy to defraud the mortgagor, were present and testified in the case, and yet defendants refused to examine them as to matters pertaining to merits of the defense. There was no deceit practiced by counsel for plaintiff as to taking of the depositions. As said before, R. T. Root, the principal owner of the defendant corporations, and in possession of their records and papers, was in Chicago and had plenty of time to go to Denver where the records were and come to Socorro with them in time for the trial if he had so desired, yet no effort was made by counsel to secure his attendance. The record bears written evidence over the signature of said Root that the mortgagor did not sell the bonds at all, but that said Root owned and sold them. The motion for a continuance contains no statement whatever of the facts which the witnesses would prove, except that their evidence would be material to the issues raised by the answer. The bill was filed on May 14, 1914, the answer on September 30 ,1914, and on October 16, 1914, a continuance, at the instance of defendants, was granted to November 16, 1914, at whcih time the case was peremptorily set for trial. Under such circumstances there was certainly no abuse of discretion in refusing a further continuance.

Counsel for defendants complain of the refusal of the court to require the production of a report upon the property of the mortgagor made by the witness Adams, and an engineer by the name of Roberts. It appears from the transcript that this Mr. Adams visited the property of the mortgagor and made an examination of the same and made a report to the syndicate which purchased these bonds, and recommended their purchase. It further appears that a Mr. Roberts also made a report on the property. The relevancy or materiality of this testimony is doubtful. The syndicate bought the bonds after an investigation by their agents and engineers. Just what the agent or engineer reported to them is of no materiality whatever, and can have no bearing upon the issues in this case, so far as we can see.

Counsel complain of the court's action in allowing the introduction in evidence of certain opinions of lawyers as to the title to the property of mortgagor. Just why these opinions were introduced it is somewhat difficult to understand unless they were introduced by way of corroboration of the testimony of the witness Adams, which was to the effect that at the time he made the invesigation of the property the said Root, the then president of the mortgagor, represented that the mortgagor owned all of the water in White Water creek. This testimony was at most only remotely connected with the merits of this case. The question in the case was whether the holders of these bonds of the mortgagor rightfully owned them and were entitled to this foreclosure proceeding. We can see no harm in the introduction of these legal opinions, the case having been tried before the court, and immaterial or irrelevant testimony presumably was not considered by it.

Various exceptions to the form of the decree were taken by the defendants. The first one mentioned in the brief is an objection to the decree which allows a certain judgment creditor a lien upon the property of equal dignity with the lien of the plaintiff, with right to share pro rata with the bondholders in proceeds of sale under the decree. The basis of this objection is that the decree in this regard was entered upon a stipulation between coun-

sel for the plaintiff and counsel for the judgment credi-
tor.   Just how the mortgagor could be injured by this
part of the decree we are unable to understand.   The
stipulation amounts to a consent that the judgment of
the judgment creditor of the mortgagor should be ele-
vated to the dignity of a concurrent lien with that of the
trust deed, and amounts simply to a waiver of a priority
which the plaintiff in this case clearly had over the judg-
ment creditor.   In case the property is sold under the
decree it is immaterial to the mortgagor whether the
money is paid to the plaintiff or to the judgment credi-
tor, because if the property should bring more than the
amount of the trust deed, then the residue would be pay-
able to the judgment creditor anyway.

Counsel for defendants urge that after the case had
been closed it was reopened, and the court, without their
knowledge or presence, heard testimony as to the expenses
incurred by the trustee in prosecuting this action.   The
record, however, contradicts this contention.   So far as
appears from the record the taking of this testimony im-
mediately followed the announcement of the court that
he would render judgment as prayed for in the complaint.
If the attorneys for the defendants were not present it
was their own fault.

Counsel for defendants have based an argument upon
a misunderstanding of the record, to the effect that the
court erred in charging interest on the allowances to the
plaintiff's attorney and the trustee at the rate of 6 per
cent. per annum.   No such allowance was made by the
decree.

Counsel for the defendants erroneously assume that the
court attempted to determine the rights of the various in-
dividual bondholders, and that there was no sufficient evi-
dence upon which to base this finding.   This is an er-
roneous assumption.   The court merely took proof as to
the total amount of the bonds outstanding, and the ques-
tion as to who owned them was not in issue in the case.

Counsel for defendants further object to the provision
of the decree whereby it is ordered that the entire mort-
gaged premises and property be sold en masse or as an

entirety. It was alleged in the complaint and found by the court that all the property, consisting of mining claims, mill sites, mill, reduction, and power plants thereon situated and erected for the treatment and reduction of ore in said mining claims constituted a single property, and that the water power, pipe line, etc., were appurtenant thereto, and the court found that it was for the best interests of all parties that the entire property be sold en masse. The uncontradicted evidence was ample to sustain such findings. It thus appears that there is no merit in the contention made.

The last objection is based upon an erroneous assumption that the court found that the defendant Tyson S. Dines, trustee for the Clear Creek Power Company and the Glendale Power Company, was in default. The decree, as originally entered, did so recite, but upon affidavits the decree was amended so as to show that the said Dines appeared by his ·attorney at the trial. There is therefore no merit in this contention.

For the reasons stated, the judgment and decree of the court below should be affirmed, and the cause remanded, with directions to enforce the decree; and it is so ordered.

ROBERTS, C.J., and HANNA, J., concur.